| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, COLORADO<br>Court Address:<br>Douglas County Justice Center<br>4000 Justice Way, Suite 2009<br>Castle Rock, CO 80109<br>(720) 437-6200 | |
| DISH NETWORK L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL FINFROCK, MAURICIO GAMEZ, RONDA HARLAN, ALI SALEH, KIMBERLY SLY AND HELEN VACCHIO,<br><br>Defendants. | ▲ COURT USE ONLY ▲ |
| **Attorneys for Plaintiff:**<br><br>NAME:     Meghan W. Martinez, #26295<br><br>ADDRESS:  MARTINEZ LAW GROUP, P.C.<br>          720 S. Colorado Blvd., Suite 1000-S<br>          Denver, CO 80246<br>PHONE:    303.597.4000<br>FAX:      303.597.4001<br>EMAIL:    martinez@mlgrouppc.com<br><br>*Counsel for DISH Network L.L.C.* | Case No.: _____<br><br>Div.: _____  Ctrm.: _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff DISH Network L.L.C. ("DISH"), through its counsel, hereby states as its Complaint against Defendants the following:

### PARTIES

1.      DISH is a Colorado limited liability company having its principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado, 80112.



2. Defendant Ronda Harlan ("Harlan") was employed by DISH as an Inside Sales Associates ("ISA") in Colorado. Upon information and belief, Harlan is a Colorado resident, and resides at 3498 E. 142nd Drive, Thornton, Colorado.

3. Defendant Helen Vacchio ("Vacchio") was employed by DISH as an ISA in Colorado. Upon information and belief, Vacchio is a Colorado resident, and resides at 7275 S. Xenia Circle, Apartment D, Centennial, Colorado.

4. Defendant Michael Finfrock ("Finfrock") was employed by DISH as an ISA in Arizona. Upon information and belief, Finfrock is an Arizona resident, and resides at 6715 E. Northridge Street, Mesa, Arizona.

5. Defendant Mauricio Gamez ("Gamez") was employed by DISH as an ISA in Arizona. Upon information and belief, Gamez is an Arizona resident, and resides at 946 E. Harrison Drive, Avondale, Arizona.

6. Defendant Ali Saleh ("Saleh") was employed by DISH as an ISA in New Jersey and Arizona. Upon information and belief, Saleh is an Arizona resident, and currently resides at 43941 W. Wade Drive, Maricopa, Arizona, 85138.

7. Defendant Kimberly Sly ("Sly") was employed by DISH as an ISA in Arizona. Upon information and belief, Sly is an Arizona resident, and resides at 883 South Utilis Drive, Gilbert, Arizona.[1]

8. Defendants each executed Arbitration Agreements with DISH under which any disputes related to their employment are to be resolved through single-plaintiff arbitration. Copies of Defendants' Arbitration Agreements are attached hereto as Exhibits A-F.

9. Defendants, collectively, are also named co-plaintiffs in a purported class and collective action commenced in arbitration against DISH with the American Arbitration Association. *See* Defendants' Arbitration Demand, a true and accurate copy of which is attached hereto as Exhibit G.

## JURISDICTION AND VENUE

10. There is a justiciable controversy between the parties in this matter because all parties are interested parties under the Arbitration Agreements and have rights affected by these Arbitration Agreements. *See* Colo. Rev. Stat. § 13-1-106; C.R.C.P. 57. Further, all necessary parties under C.R.C.P. 57 (j) are before the Court.

---

[1] Harlan, Vacchio, Finfrock, Gamez, Saleh, and Sly are referred to herein, collectively, as "Defendants".

2

11. This Court has jurisdiction over this action pursuant to Colo. Rev. Stat. § 13-51-101, *et seq.*

12. This Court has personal jurisdiction over the non-resident Defendants pursuant to Colo. Rev. Stat. § 13-1-124 and other applicable laws.

13. Specifically, the non-resident Defendants are subject to the jurisdiction of this Court because, among other things, they are either (i) residents of the State of Colorado and/or (ii) they entered into and breached a contract with DISH (by transacting with DISH, which is domiciled in Douglas County, Colorado and, thereafter, asserted an unauthorized class/collective action in arbitration), which caused injury to DISH in the State of Colorado in that it failed to obtain the benefit of its bargain with Defendants. For its part, DISH has incurred unnecessary legal fees in the defense of its arbitration agreement as a result of Defendants' failure and/or refusal to proceed on a single-plaintiff basis in arbitration.

14. Venue is proper in this Court pursuant to C.R.P. 98(c) because, among other things, DISH's principal place of business is in Douglas County, Colorado, and the Arbitration Agreements were transacted out of Douglas County.

## GENERAL ALLEGATIONS

15. The above facts establish: (i) the existence of an actual controversy relating to the legal rights or duties of the parties; (ii) standing; and (iii) the invasion or threatened invasion of DISH's legal rights and Defendants' failure to abide by their respective Arbitration Agreements.

16. Defendants' Arbitration Demand asserts claims for: (a) failure to pay minimum wage/denial of final wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206; (b) failure to pay minimum wages/denial of final wages in violation of Arizona, Colorado and New Jersey state law; (c) wage theft and denial of final wages in violation of Arizona, Colorado and New Jersey state law; (d) wage theft and unlawful wage deductions in violation of Arizona, Colorado and New Jersey state law; unjust enrichment; (e) failure to pay overtime in violation of the FLSA; (e) failure to pay minimum wages in violation of the FLSA; and (f) failure to pay minimum wages in violation of Arizona state law. *See* Exhibit G.

17. Defendants styled the arbitration as a "class and collective" arbitration in which Defendants purport to assert their own claims and the claims of a putative class of individuals who Defendants have defined as:

> All current and former employees of DISH Network, LLC who were employed as Inside Sales Associates at any time between December 23, 2013 and the present and who were (a) subject to illegal pay deductions and/or (b) denied their final pay.

and

3

> All current and former employees of DISH Network, LLC who were employed as Inside Sales Associates in Arizona at any time between December 23, 2013 and the present and who were subject to pay schemes under which DISH purported to pay them either (1) a weekly salary or (2) commissions based on the activations they obtained.

*See* Exhibit G, Arbitration Demand, ¶¶ 50, 51.

18. However, the Arbitration Agreement each Defendant signed only contemplated a relationship between DISH and the employee, as evidenced, in part, by the following provisions:

> In consideration of the Employee's employment by DISH (and/or any of its affiliates) as good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, **the Employee and DISH agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's** application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration.
>
> \*\*\*\*
>
> The **prevailing party** in any arbitration pursuant to this agreement to arbitrate shall be entitled **to its, his, or her** reasonable attorneys' fees and costs and arbitration expenses.

*See* Exhibits A-F, paragraphs 1 and 3 (emphasis added).[2]

19. The Arbitration Agreements clearly and unmistakably evidence an intent by the parties to limit litigation between them to single-plaintiff arbitration, *i.e.*, arbitration between DISH and each defendant in their individual, non-representative capacity; and, by way of contrast, are silent with respect to authorization for a class and/or collective action arbitration and/or the consolidation of single-plaintiff claims.

20. By filing a class and/or collective action complaint in arbitration, Defendants breached their Arbitration Agreements with DISH, thereby causing DISH to lose the benefit of its bargain in employing Defendants subject to certain terms, conditions and limitations.

21. DISH hereby asks this Court issue two declarations:

(i) **First**, DISH asks this Court to declare that a court, and not an arbitrator, has sole jurisdiction on the gateway issue, and therefore must decide whether the Arbitration Agreements authorize class and/or collective action arbitration; and

---

[2] The Defendants Arbitration Agreements are collectively referred to herein as the "Arbitration Agreements."

4

(ii) **Second**, DISH asks this Court to declare that Arbitration Agreements do not authorize a class and/or collective action arbitration.

22. In requesting this declaratory relief, DISH is requesting an interpretation of the rights, legal status and relationship of the parties under the above law and facts.

### FIRST COUNT
### (Declaratory Judgment Pursuant to C.R.C.P. 57 and C.R.S.A. § 13-51-101 *et seq.*)

23. DISH hereby incorporates by reference paragraphs 1-22 of the Complaint as if set forth at length herein.

24. It is well settled that a court should decide whether an arbitration agreement authorizes class and/ or collective action, absent clear and unmistakable evidence the parties intended to submit the question to arbitration. *See Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 686-87 (2010) (holding that the arbitrators exceeded their power under the FAA by imposing their own policy and noting that where an arbitration agreement is silent on the issue of class arbitration, no such agreement exists); *see also Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 333-34 (3d Cir. 2014); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 598-99 (6th Cir. 2013); *Central West Virginia Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 275 (4th Cir. 2011) (citing the U.S. Supreme Court and holding "that the particular question of whether parties had 'agreed to authorize class arbitration' was not one of procedure").

25. Colorado state law also supports the position that a court should determine questions of arbitrability. *See City & Cnty. of Denver v. Dist. Court in & for City & Cnty. of Denver*, 939 P.2d 1353, 1363 (Colo. 1997) (finding that when the contract is silent on the question of whether the district court or ADR decision-maker should have decided whether the claims fell within the reach of the ADR clause, the district court should have made the determination).

26. The Arbitration Agreements at issue here do not contain clear and unmistakable evidence that the parties intended to submit the question of who should decide whether the Agreements permit class and/or collective action to the arbitrator.

27. Therefore, the Court must decide the gateway issue of whether the Arbitration Agreements authorize class and/or collective arbitration.

28. The Court's resolution of this dispute will terminate this controversy and remove an uncertainty as to the parties' rights and obligations under the Arbitration Agreements.

WHEREFORE, DISH respectfully requests judgment on Count I and that the Court issue an Order:

(i) Declaring that a court, not an arbitrator, has sole jurisdiction on the gateway issue and therefore must decide whether the Arbitration Agreements authorize class and/or collective arbitration; and

(ii) Granting such other and further relief as the Court deems just and proper.

## SECOND COUNT
**(Declaratory Judgment Pursuant to C.R.C.P. 57 and C.R.S.A § 13-51-101 *et seq.*)**

29. DISH hereby incorporates by reference herein paragraphs 1-28 of the Complaint as if set forth at length.

30. Where an arbitration agreement does not demonstrate that the parties consented to class and/or collective action arbitration, courts cannot order class and/or collective arbitration. *See Medina v. Sonic-Denver T, Inc.*, 252 P.3d 1216, 1220 (Colo. App. 2011) (emphasizing that consent is required).

31. Similarly, and consistent with the overwhelming majority of courts to decide this issue, where an agreement is silent concerning class arbitration, none is authorized.

32. A court should interpret an agreement based its their plain language and in a manner that "best effectuates the intent of the parties." *BFN-Greeley, LLC v. Adair Grp., Inc.*, 141 P.3d 937, 940 (Colo. App. 2006).

33. The Arbitration Agreements are silent with respect to class and/or collective actions and, in addition, contain language that shows the parties intended to arbitrate only claims between themselves. Therefore, the Arbitration Agreements do not authorize arbitration on a class and/or collective action basis.

34. Defendants maintain, however, that they may proceed to arbitrate the claims belonging to the putative class/collective action members.

35. The Court's resolution of this disagreement will terminate this controversy and remove an uncertainty as to the parties' rights and obligations under the Arbitration Agreements.

36. DISH therefore seeks a declaration that Defendants cannot assert claims on behalf of putative class and collective action members.

WHEREFORE DISH respectfully requests judgment on Count II and that the Court issue an Order:

(i) Declaring that the Arbitration Agreements do not authorize the Defendants to assert any claim against DISH on behalf of a purported class or collective action members; and

(ii)    Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 5th day of May, 2017.

                                        MARTINEZ LAW GROUP, P.C.

                                      */s/Meghan W. Martinez*
                                      Meghan W. Martinez, #26295

**Plaintiff's Address:**
9601 S. Meridian Boulevard
Englewood, Colorado 80112

7